# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TIFFANY HARRIS,

     Plaintiff,

v.                                                                    Case No: 8:22-cv-2651-KKM-SPF

ADVANCED MARKETING &
PROCESSING, INC., d/b/a PROTECT MY CAR,

     Defendant.

_____

## ORDER

     Tiffany Harris answered two phone calls on her cell phone with a pre-recorded message set up by Advanced Marketing that she alleges were unsolicited. Advanced Marketing claims that Harris consented to receive such calls when she solicited an auto insurance quote online and clicked that she agreed to the terms and conditions of the website. The terms and conditions also included an arbitration agreement. Advanced Marketing moves to compel arbitration based on Harris's alleged agreement. But Harris claims she never visited the auto insurance quote website. Because there is a genuine dispute of material fact as to whether Harris agreed to arbitration, Advanced Marketing's motion is denied without prejudice and a bench trial is scheduled on the limited issue of whether Harris clicked the online button binding her to arbitration with Advanced Marketing.

## I.   BACKGROUND

Tiffany Harris, on behalf of herself and others similarly situated, sued Advanced Marketing and Processing, Inc., for violations of the Telephone Consumer Protection Act (TCPA) after allegedly receiving unsolicited, pre-recorded calls. *See* Am. Compl. (Doc. 5) ¶¶ 6, 7, 9, 23. Harris alleges that she received two unsolicited calls on her cell phone between July and August 2022, using "an artificial or prerecorded voice." *Id.* ¶¶ 9, 10, 14, 15.

In lieu of an answer, Advanced Marketing moves to compel arbitration and argues that Harris waived her right to bring a class action against it and agreed to arbitrate all disputes when she clicked the "Get Quote" button on an insurance quote website (1nsuranceRates.com). *See* Motion to Compel Arbitration (Doc. 12). Advanced Marketing contends that Harris entered her personal information on the website, including her cell phone number, and clicked the "Get Quotes" button, which included an acknowledgment that "[b]y clicking 'get quotes', I represent that I am 18+ years of age and agree to the privacy policy and terms and conditions." *Id.* at 3 (capitalization omitted). Hyperlinked terms and conditions state in bold letters in the second paragraph that "the agreement contains disclaimers of warranties, limitations of liability, releases, a class-action waiver, and the requirement to arbitrate any and all claims that may arise hereunder." *Id.* at 5 (capitalization omitted). The text under the "Get Quotes" button also indicated that

2

clicking the button gave the user's consent to receiving phone calls, texts, and emails using automatic dialing systems and pre-recorded messages from 1nsuranceRates.com and "one or more of its marketing partners." *Id.* at 4 (capitalization omitted). The hyperlink attached to the text "marketing partners" reveals a list of companies including Advanced Marketing. *Id.*

Harris asserts that she never visited the website and never provided her information or agreed to receive calls or messages from Advanced Marketing. *See* Resp. in Opp'n (Doc. 14) at 2. Advanced Marketing replies, attaching additional evidence that Harris is bound by the arbitration agreement. Advanced Marketing also argues that if Harris presents a genuine dispute of material fact, the Court should permit discovery and proceed to trial on the limited question of whether Harris agreed to arbitrate her disputes with Advanced Marketing. *See* Reply in Supp. Of Motion to Compel Arbitration (Doc. 17).

## II.    LEGAL STANDARD

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emp'rs Ins. Of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). The FAA reflects a liberal federal policy favoring arbitration. *Jpay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). If parties agree to arbitrate a dispute, the court must enforce that agreement. *Id.*

Of course, no party can be forced to submit to arbitration if they have not agreed to do so. *Emps. Ins. Of Wausau*, 251 F.3d at 1322. "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). When a party seeking to avoid arbitration claims that no agreement exists, "[s]tate law generally governs" because "whether an arbitration agreement exists at all is 'simply a matter of contract.' " *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotation omitted).

A federal court sitting in diversity applies the choice of law rules of the forum state. *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (citing *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Florida uses the *lex loci contractus* theory to determine which law applies in contract claims. *Id.* Under this theory, "in the absence of a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract is made, *i.e.*, where the last act necessary to complete the contract is done." *Id.* (footnote omitted). Because neither party disputes that the arbitration agreement in question was signed by someone in Alabama that clicked the "Get Quotes" button, Alabama law controls. *See* Resp. in Opp'n at 4; Reply in Supp. Of Motion to Compel at 4. Under Alabama law, a valid contract includes "an offer and an acceptance, consideration,

4

and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009) (citations and quotations omitted). But under any forum's law, the issue is whether Harris—instead of some third-party—agreed to arbitrate her disputes with Advanced Marketing.

The Court employs a "summary judgment-like standard" to determine whether an arbitration agreement exists. *Bazemore*, 827 F.3d at 1333. "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Id.* (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)). But if there is a genuine dispute of fact concerning the making of the arbitration agreement, the FAA instructs that "the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." 9 U.S.C. § 4; *see also Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017).

## III.   ANALYSIS

Advanced Marketing attempts to prove the existence of an agreement by offering several pieces of evidence. First, Advanced Marketing submits the declaration of Michael Sabau, Vice President of Advanced Marketing, and alleges that Harris agreed to arbitrate claims against Advanced Marketing when she clicked the "Get Quote" button on June 9, 2022. Sabau Decl. (Doc. 13) ¶ 12. Advanced Marketing also includes a report and digital

playback from a digital verification service that purports to show a "re-enactment" of Harris filling out a form on 1nsuranceRates.com, providing her personal information (including her phone number), and clicking "Get Quotes." *See id.* ¶ 13. Advanced Marketing contends that the terms and conditions hyperlinked under the Get Quotes button "conspicuously identify the mandatory arbitration and class waiver provisions at the outset in fully capitalized [] text." Motion to Compel Arbitration at 5.

Harris contends in a sworn declaration that she has never visited 1nsuranceRates.com and never provided her personal information to Advanced Marketing or consented to receive calls or messages from them. Resp. in Opp'n at 5; Harris Declaration (Doc. 14-1) at ¶ 3. She states that the IP address of the only device she uses to access the internet is different from the IP address alleged to have provided her phone number to the website. Resp. in Opp'n at 5. Harris also states that the information provided to Advanced Marketing is inaccurate because the address is not her address, the email is not her email, and the make and model of the car does not describe her vehicle. Harris Declaration ¶ 4. Thus, Harris argues, she "cannot be bound by the terms of a contract that she never entered into." *Id.*

Advanced Marketing counters with compelling evidence. It provides a transcript of a call it placed to the number provided for Harris within an hour after her name and phone number were submitted to 1nsuranceRates.com. Someone answered and stated, "I was

6

looking for an insurance quote, and I've got that." Reply in Supp. Of Motion to Compel Arbitration (Doc. 17) at 2; Call Tr. (Doc. 18-2) at 2. According to the transcript, a caller from Advanced Marketing begins with "Hello, Mrs. Harris" and asks how she is doing. Call Tr. at 2. The receiver of the call (purportedly Harris) responds that she is "doing fine," and proceeds to converse with the caller, eventually informing the caller that she has enough insurance and ending the conversation. *Id.* Advanced Marketing argues that this call shows that Harris is the one who submitted the form and therefore agreed to arbitrate any disputes. Reply in Supp. of Motion to Compel Arbitration at 3. Advanced Marketing argues that Harris "had no problem acknowledging she indeed had been looking for an insurance quote and, in fact, received it," indicating that there is no "genuine issue of material fact as to whether she submitted her name and telephone number on the Site and entered into the arbitration agreement." *Id.*

Advanced Marketing discounts Harris's quibble with the different IP address, stating that IP addresses "regularly change" and the fact that the user was in Alabama and used the same internet provider as Harris shows that it was Harris who submitted the information to the site. *Id.* at 3–4. As for the mismatch of information, Advanced Marketing disputes it proves anything because Harris could have intentionally listed a different address, email, and vehicle than her own. Advanced Marketing admits, though,

that if Harris has shown a genuine dispute of material fact, the Court must proceed to a trial under the FAA. *See id.* at 4.

Based on the above, a genuine dispute of material fact exists—namely, whether Harris signed the agreement requiring arbitration. Advanced Marketing provides evidence that Harris signed the agreement in the form of the call transcript and Harris's information appearing on the 1nsuranceRates.com website associated with the arbitration click-wrap agreement. *See* Sabau Decl. ¶ 24; Jornaya Report (Doc. 13-1) at 4; Call Tr. But Harris provides evidence in a sworn statement that the information 1nsuranceRates.com captured is not hers and that she never visited that site or attempted to get a quote. *See* Harris Decl. ¶¶ 3, 4. Although Advanced Marketing offers evidence of a phone call with an Advanced Marketing representative, choosing one party's version of events over the other would require credibility determinations, which are inappropriate at this stage. This case must proceed to trial. Because Harris did not demand a jury trial by the deadline for her response to the motion to compel arbitration, *see Burch*, 861 F.3d at 1348–50, the case will proceed to a bench trial scheduled after the parties have filed a Case Management Report. The trial will be limited to determining whether Harris clicked the "Get Quotes" button on 1nsuranceRates.com and thus agreed to arbitration.

## IV.   CONCLUSION

The FAA construes liberally a party's ability to compel arbitration. But Harris has provided sufficient evidence to create a genuine dispute of material fact as to whether she agreed to arbitrate her disputes with Advanced Marketing. Accordingly, the following is **ORDERED:**

1. Advanced Marketing's Motion to Compel Arbitration (Doc. 12) is **DENIED** without prejudice. Advanced Marketing may renew its motion if successful on proving that Harris entered into the contract.

2. The Court will hold a bench trial under 9 U.S.C. § 4 to determine the existence of binding arbitration agreements.

3. Parties are directed to file a Case Management Report by **March 10, 2023,** identifying their requested dates for dispositive motions and the bench trial.

**ORDERED** in Tampa, Florida, on February 24, 2023.

Kathryn Kimball Mizelle
United States District Judge